IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-2115-RBJ-NYW

MICHAEL A. COLLINS,

    Plaintiff,

v.

DIVERSIFIED CONSULTANTS, INC.,
STELLAR RECOVERY, INC.
MEDICREDIT, INC.,
TRANS UNION, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC., and
EQUIFAX INFORMATION SERVICES, LLC, individually,

    Defendants.

---

ORDER

---

    Defendants TransUnion, LLC, Experian Information Solutions, Inc., Equifax Information Services, LLC and Medicredit, Inc., move for summary judgment.[1] The Court referred the motions to Magistrate Judge Nina Y. Wang, who has issued an extensive report and recommendation. The plaintiff has filed an objection to a portion of Judge Wang's recommendation. After de novo review, this Court accepts the magistrate judge's recommendation and rules on the pending motions consistent with that recommendation.

---

[1] Defendant Diversified Consultants, Inc. previously filed a motion for partial summary judgment which was briefed and became the subject of a recommendation by Magistrate Judge Wang, Mr. Collins' objection, a response, a reply and this Court's order adopting the magistrate judge's recommendation. *See* ECF Nos. 51, 73, 91, 117, 125, 141, 143 and 147. Defendant Stellar Recovery, Inc. filed a motion for summary judgment, ECF No. 139, which was addressed as part of the pending magistrate judge recommendation. However, plaintiff's claims against Stellar were then settled. *See* ECF No. 178.

## BACKGROUND

Michael Collins filed this lawsuit on September 24, 2015. In his original Verified Complaint he named five defendants: Diversified, Medicredit, TransUnion, Experian and Equifax. ECF No. 1. He later amended his complaint, adding Stellar as a sixth defendant. ECF No. 36. He alleges that the defendants either misreported or improperly attempted to collect debts that he disputes, resulting in damage to his creditworthiness. He asserted five claims:

(1) violation of the Fair Credit Reporting Act ("FCRA") by Trans Union, Experian and Equifax, which are consumer reporting agencies, sometimes referred to in this order as "CRAs" or the "CRA Defendants;"

(2) violation of the FCRA by Diversified, Stellar and Medicredit, as furnishers of credit information;

(3) violation of the Fair Debt Collection Practices Act ("FDCPA") by Diversified, Stellar and Medicredit;

(4) common law negligence by Diversified, Stellar and Medicredit; and

(5) violation of the Colorado Consumer Protection Act ("CCPA") by all defendants. *See* Amended Verified Complaint, ECF No. 36, at 11-16.

Mr. Collins' claims arise primarily from a $410.14 balance on an account he had in 2014 at Comcast Cable, West Division – Mile High States. There is second debt, $130 at the Boulder Holistic Medical Center, that he has also mentioned, but only the Comcast account is relevant to Mr. Collins' objection to Judge Wang's recommendation.

On September 11, 2013 Mr. Collins entered into an agreement with Comcast for Cable TV, Internet and Telephone services. ECF No. 36 at ¶27. He alleges that, after he missed a payment, Comcast disconnected the service and sent a representative to his home to either collect the late payment or take possession of the equipment. This took place approximately November 16, 2014. According to Mr. Collins, the representative said that he owed approximately $400, but if he canceled his service he would only owe approximately $200. He alleges that he decided that he would pay the $200 and cancel the service because he was unhappy with the service and its cost. He claims that his sister, with whom he was living at the time, paid Comcast $220. But instead of canceling the service, Comcast restored it, only to disconnect it again soon thereafter. *Id.* at ¶28. Comcast claimed that he still owed $410.14, and when the debt was not paid, Comcast referred it out for collection.

On January 14, 2015 Mr. Collins received a call from a debt collector with Diversified who reported that he owed Comcast that amount. Mr. Collins told the collector that he did not owe Comcast anything, and that if Diversified reported the alleged debt to any consumer reporting agency he would sue Diversified. Diversified discontinued collection efforts, reported to consumer reporting agencies (to whom Diversified had apparently earlier reported the debt) that the debt was disputed, and had no further communication with Mr. Collins. ECF No. 147 at 2.

As discussed in more detail later, the consumer reporting agencies responded by requesting that Diversified reinvestigate and verify the accuracy of the debt. This was done. Nevertheless, Diversified requested that the credit reporting agencies delete Diversified's trade line for the Collins Comcast Account. *Id.* at 2-3. I granted Diversified's motion for what

3

amounted to partial summary judgment. *Id.* at 12. That left only the third claim (FDCPA) and part of the Fourth Claim (negligence in debt collection efforts) against Diversified. Those claims remain alive at this time.

On August 3, 2015 Mr. Collins was denied credit when he applied for a bank loan. He alleges that this happened because Diversified falsely reported that he had a collection account (a claim seemingly at odds with the facts as discussed in my September 12, 2016 order). *See id.* at ¶¶21-32. He also alleges that Medicredit's reporting of a collection account was responsible for the denial of his application for the bank loan on August 3, 2015. *Id.* at 46.[2] As we will see, during discovery Mr. Collins also said that Experian was responsible for the denial of the bank loan.

At some point Comcast referred the same debt to Stellar, perhaps because Diversified was not working the account. On September 21, 2015 Stellar sent Mr. Collins a dunning letter claiming that he owed Comcast $410.14. He alleges that Stellar improperly reported the debt to consumer reporting agencies, thereby violating the FDCPA. The details of his complaints about Stellar are set forth in his Verified Amended Complaint, ECF No. 36, at ¶¶33-42. Shortly after

---

[2] Mr. Collings asserted that Medicredit was reporting a collection account for $130, but that he had no idea who Medicredit is or for whom they were trying to collect a debt. *Id.* at ¶47. According to the affidavit of Donald Wright, Senior Vice President of Operations for Medicredit, Inc., the debt was owed to the Boulder Holistic Medical Center and was placed for collection with Medicredit on February 3, 2011. ECF No. 130-1 at ¶¶4, 7. On April 15, 2011 Medicredit reported the debt to consumer reporting agencies. On May 31, 2011 Mr. Collings sent a letter to Medicredit disputing the debt. Medicredit immediately deleted the account and stopped reporting it. *Id.* at ¶¶8-10. However, when Medicredit converted to a new software program in July 2015 Mr. Collins' account spontaneously (not by the action of any employee) and mistakenly began credit reporting of the old $130 debt despite the previous dispute and deletion. On September 9 and 11, 2015 Mr. Collins again notified Medicredit that he disputed the account, and Medicredit again deleted the account and stopped reporting it on September 13, 2015. *Id.* at ¶¶14-19. Mr. Collins' Verified Complaint, in which he claimed that he had no idea who Medicredit was of for whom it was attempting to collect a debt, was filed on September 24, 2015.

Magistrate Judge Wang recommended that Stellar's motion for summary judgment be granted, Mr. Collins and Stellar reached a settlement. *See* ECF No. 178.

The claims have been narrowed somewhat. I have mentioned the Court's partial summary judgment in which plaintiff's Second and Fourth (in part) Claims against Diversified were dismissed. I also mentioned the settlement with Stellar. In addition, Mr. Collins has voluntarily dismissed or withdrawn the remainder of his Second claim and his Fifth Claim in its entirety.[3] Accordingly, the disputed claims that are the subject of the pending motions and the magistrate judge's recommendation are plaintiff's First Claim (FCRA claims against Trans Union, Equifax and Experian); his Third Claim (FDCPA against Medicredit); and his Fourth Claim (negligence against Medicredit). Magistrate Judge Wang recommends that the Court dismiss the First Claim, dismiss part of what remains of the Third Claim, and dismiss the remainder of the Fourth Claim.

## STANDARD OF REVIEW

Following the issuance of a magistrate judge's recommendation on a dispositive matter the district court judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate with instructions." *Id.* Any part of the magistrate judge's recommendation to which a proper objection has not been made may be reviewed "under any standard [the district court] deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

---

[3] The dismissal of the Fifth Claim against all defendants was noted by Magistrate Judge Wang in her recommendation concerning Diversified's motion for partial summary judgement. ECF No. 117 at 18.

**CONCLUSIONS**

Magistrate Judge Wang examined the multiple pending motions, responses and replies in detail and issued an impressive 58-page recommendation. Mr. Collins' objection only addresses the First Claim, i.e., the FCRA claims against the three consumer reporting agencies (Trans Union, Experian and Equifax). Accordingly, the Court has conducted a de novo review of the magistrate judge's recommendations concerning those claims. [4]

Judge Wang summarized plaintiff's claim against the three CRA Defendants as having four main parts:

> Mr. Collins alleged that Defendants Trans Union, Experian, and Equifax, as consumer reporting agencies ("CRAs") under 15 U.S.C. § 1681a(f), negligently and willfully violated sections 1681e(b), 1681i(a), and 1681g of the FCRA by [1] producing "consumer reports" with inaccurate credit information, [2] failing to maintain reasonable investigation and reinvestigation procedures to ensure the reporting of accurate credit information, [3] failing to properly notify Plaintiff within the prescribed timeframe of the investigation and/or reinvestigation results, and [4] failing to delete inaccurate credit information from Plaintiff's consumer report ("Claim I").

ECF No. 174 at 3 (bracketed numbers added).

**A. Trans Union**.

1. Trans Union's Conduct.

---

[4] Generally, a pro se litigant's pleadings are "construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the rule does not necessarily apply in the case of extremely litigious plaintiffs. *See David v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994). Mr. Collins is a frequent pro se litigant, typically asserting credit reporting and debt collection claims, and he regularly invokes the *Hall v. Bellmon* standard in his lawsuits. In his deposition on June 10, 2016 Mr. Collins acknowledged having filed 35 lawsuits—29 in state court and six in federal court—that are similar in nature to this case. ECF No. 137-2 at 161:22–162:7. *See also Michael A. Collins v. Trans Union, LLC*, No. 14-cv-00742-RBJ-BNB, 2015 WL 8959436 (D. Colo. Dec. 16, 2015) (awarding attorney's fees against Mr. Collins upon a finding that he had engaged in bad faith and vexatious litigation). While I recognize his pro se status and its limitations, Mr. Collins, unlike most pro se litigants, is very experienced and familiar with the litigation process.

Mr. Collins' FCRA claim against Trans Union arises from Trans Union's reporting on Mr. Collins's Diversified, Stellar and Medicredit accounts. ECF No. 174 at 14. The evidence concerning what Trans Union did and did not do regarding those accounts is not disputed. The dispute concerns additional things that Mr. Collins believes Trans Union should have done.

Mr. Collins sent Trans Union a letter indicating that he was disputing the Diversified account, i.e., Diversified's report that he had an outstanding debt owed to Comcast. Trans Union then sent an Automated Consumer Dispute Notification which triggered the requirement that Diversified reinvestigate and verify the accuracy of its information. Diversified reinvestigated, found no inaccuracy in the information it had received, and sent Trans Union its verification. Later, at Diversified's request, Trans Union deleted Diversified's account from Mr. Collins' credit file. *Id.* at 14-15.

Trans Union also received a letter from Mr. Collins disputing the Medicredit account. However, Trans Union determined that its Medicredit account was not reporting on Mr. Collins' Comcast debt. Trans Union informed Mr. Collins of this finding. *Id.* at 15.

Finally, after receiving a letter from Mr. Collins' letter disputing the Stellar account, again meaning Stellar's report that he owed a $410.14 debt to Comcast, Trans Union notified Stellar of the dispute, and as it had done with the Diversified account, requested that Stellar reinvestigate and verify the accuracy of the account. Stellar did so and sent back its verification. Trans Union forwarded the results to Mr. Collins. Later, at Stellar's request, Trans Union deleted the Stellar account of the Comcast debt from Trans Union's credit file.

      2. <u>Magistrate Judge Wang's Analysis</u>.

Judge Wang determined that Mr. Collins had not come forward with evidence showing either that the underlying debt was inaccurate or that Trans Union employed unreasonable procedures after learning that the debt was disputed.

      a. *Inaccurate information*.

Mr. Collins contends that the information reported by Trans Union was inaccurate because he did not owe a debt of $410.14 to Comcast. Magistrate Judge Wang reviewed Trans Union's evidence documenting the debt. ECF No. 174 at 21-22. She also took judicial notice of the evidence provided by Diversified concerning its investigation which was discussed in her recommendation (and this Court's acceptance of the recommendation) on Diversified's motion earlier in this case. *Id.* at 22-23. This included evidence of Comcast's invoices and confirmation that the payment of $220 (made by Mr. Collins' sister according to him) was applied to his then-existing balance of $643.99, reducing his debt to $410.14. *See* ECF No. 147 at 4-5. This was for services used between October 12 and December 4, 2014. *Id.*

Judge Wang found that Mr. Collins produced no contrary evidence other than his assertion that a Comcast representative offered to settle the debt for $200, and that his sister then paid the $220. The statement attributed to the unnamed Comcast representative is inadmissible hearsay as against Trans Union (or Equifax or Experian). The assertion that Mr. Collins accepted the offer, and that his sister paid the settlement amount when she made a $220 payment is unsupported by any corroboration by his sister, and it is specifically contradicted by the

8

evidence that the $220 was applied to reduce the debt to the $410.14 that was assigned for collection.

Mr. Collins objects to this part of the recommendation on the grounds that his "verified" description of the meeting with the Comcast representative is evidence, thus creating a factual dispute that should be resolved by a jury at trial. ECF No. 181 at 4-6. That ignores the obvious hearsay problem that he would face. Mr. Collins has not identified a witness who could provide admissible testimony concerning the alleged events or admissible documentation of them.

Therefore, I agree with Judge Wang that Mr. Collins has not established that there is a genuine dispute of material fact concerning the inaccuracy of the Comcast debt.

    b. *Reasonableness of Trans Union's Procedures*.

Failure to show that the debt was inaccurate is sufficient to sustain Trans Union's motion for summary judgment. *See Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991). Nevertheless, Judge Wang did address the reasonableness of Trans Union's procedures. In my de novo review I bear in mind two pertinent sections of the FCRA:

> Whenever a consumer reporting agency prepares a consumer report it shall follow *reasonable procedures* to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b)(emphasis added).

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a *reasonable reinvestigation* to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer. . . .

15 U.S.C. § 1681(a)(1)(A) (emphasis added).

The specific procedures that Trans Union follows to assure accuracy of its consumer reports are described in the Declaration of Frederick Grandt, a Representative II in Trans Union's Litigation Support Department. ECF No. 128-1 at ¶¶5-27. The declaration included discussion of procedures specific to Trans Union's relationships with Diversified, Medicredit, and Stellar. *Id.* at ¶9. It also included detailed discussion of the procedures invoked concerning the Collins debt. *Id.* at ¶¶10-11, 18-27 and ECF No. 128-5. Judge Wang reviewed this evidence and found that it was evidence of the use of reasonable procedures. *See* ECF No. 174 at 25-26, 38-39. In contrast, Judge Wang found that Mr. Collins had adduced no evidence suggesting that Trans Union's procedures were unreasonable. *Id.* at 26. Indeed, he has testified that he did not know what procedures Trans Union employed. *Id.* However, it is the plaintiff's burden to show that the

Mr. Collins argued that instead of relying on Diversified and Stellar, Trans Union should have verified the accuracy of the debt itself. But as Judge Wang noted, "[a] reasonable reinvestigation . . . does not require CRAs to resolve legal disputes about the validity of the underlying debts they report." *Wright v. Experian Information Solutions, Inc.,* 805 F.3d 1232, 1242 (10th Cir. 2015). Moreover, Judge Wang found that Mr. Collins produced no evidence that he gave Trans Union reason to question the reliability of the information provided by Diversified or Stellar after reinvestigation. ECF No. 174 at 29-30. Judge Wang concluded that Mr. Collins failed to create a triable issue of material fact as to the reasonableness of Trans Unions' procedures under 15 U.S.C. §§ 1681e(b) and 1681i(a). *Id.* at 30.

In his objection, Mr. Collins states that he does not have to introduce "direct evidence" of unreasonable procedures, because inaccurate credit reports "by themselves can fairly be read as

evidencing unreasonable procedures." ECF No. 181 at 7. I disagree. This position assumes that a CRA is strictly liable if the underlying debt turns out not to be owed. That is not the law. *See, e.g., Hill v. Equifax Info. Servs., LLC,* 974 F. Spp. 2d 865, 875 (M.D.N.C. 2013) (the FCRA "does not impose strict liability on consumer reporting agencies for inaccuracies in reporting."). Rather, the statute requires that the CRA "follow reasonable procedures to assure maximum possible accuracy of the information about the individual about whom the report relates." 15 U.S.C. § 1681d(b). To be sure, "maximum possible accuracy" is and should be a demanding standard. But it still comes back to "reasonable procedures."

Mr. Collins attaches to his objection to the recommendation three consent orders issued by the Administrator of the Colorado Fair Debt Collection Practices Act imposing discipline on Diversified for improper debt collection practices. ECF No. 181 at 33-50. The dates of the orders were October 31, 2013; October 16, 2014; and August 15, 2016. The last order was issued after the events in this case, but the inference Mr. Collins appears to draw is that Trans Union should have known from the first two reports that Diversified is not a reliable source, and therefore, it should have conducted its own independent investigation of the debt notwithstanding Diversified's reinvestigation and verification.

This argument was not raised previously so far as I can tell. Regardless, even if I assume (because Mr. Collins did not show it) that Trans Union was aware of these orders at times relevant to this case, none of the discipline imposed on Diversified concerned reinvestigation or verification of a disputed debt at the request of a consumer reporting agency. Moreover, Trans Union requested and received the same reinvestigation and verification of the Comcast debt by Stellar. ECF No. 128-1 at ¶26.

Finally, Mr. Collins suggests that he is aware from other cases he has filed, and from other reported cases, that Trans Union's employees do not always follow Trans Union's procedures. ECF No. 181 at 8-9. But he has produced no evidence that that happened in this case. If it had, we might have a different case, but he has to have the goods.

The bottom line is that I agree with Judge Wang that he has not come forward with evidence that Trans Union's procedures, either in general or as applied to his account, were unreasonable.

### B. Equifax.

Equifax's procedures are discussed in the Declaration of Latonya Munson, a Legal Support Associate. ECF No. 135-1 at 2-5. She reports that Equifax received a letter from Mr. Collins on April 6, 2015 disputing Diversified's account showing that he owed a debt to Comcast. *Id.* at 5-6, 8-9. It requested and received reinvestigation and verification. Judge Wang notes that Mr. Collins has withdrawn his claim concerning that account.

Equifax received a dispute letter from Mr. Collins concerning its Medicredit account on April 21, 2015. *Id.* at 6- and 13-17. This was the Boulder Holistic Medicine account. Reinvestigation and verification were requested and provided. Mr. Collins has withdrawn his claim related to that account.

Equifax received a dispute letter from Mr. Collins concerning it Stellar account concerning the Comcast debt. *Id.* at 7. Equifax determined, and advised Mr. Collins, that it did not have a Stellar account on this debt. However, Mr. Collins produced his Equifax credit file which did show that Stellar had reported the Comcast debt as unpaid and placed for collection. ECF No. 153 at 1. Accordingly, to Mr. Collins' benefit, Magistrate Judge Wang found that

Equifax had not established the accuracy of the Stellar account and, implicitly, that it had not established the reasonableness of its procedures -- even though the accuracy of the same debt had been reinvestigated and verified by Stellar at the request of Trans Union. ECF No. 174 at 31-32.

Nevertheless, Judge Wang found that Mr. Collins had not established that he had a triable case against Equifax because he produced no evidence supporting his claim that Equifax's report had caused him to suffer either economic or non-economic damages. Specifically, she found that Mr. Collins had not offered any evidence to support his claim that Equifax had caused him to lose an opportunity for a bank loan on August 3, 2015. On the contrary, his deposition testimony contradicted that claim. *Id.* at 32-33. She also found that Mr. Collins' assertion that Equifax had caused non-economic damage, i.e., "loss of life enjoyment, impairment of quality of life, . . . damage to his reputation, worry, fear, emotion [sic] distress, mental anguish, fear of personal and financial safety and security, anger, humiliation, embarrassment, inconvenience, anxiety, and frustration, amongst other negative emotions," was an unsubstantiated allegation insufficient to establish emotional damages under the FCRA. *Id.* at 33-34. She characterized Mr. Collins' deposition testimony to the same effect as self-serving, conclusory and uncorroborated. *Id.* at 34.

What I see here are a couple of things. First, Mr. Collins did not tie any of these alleged damages to Equifax. Second, his claim that he sustained this long list of non-economic damages is incredible on its face. After all, we are talking about a CRA report indicating that Mr. Collins had one unpaid debt to Comcast for $410. It is not plausible in the overall context of Mr. Collins' extensive credit and litigation history that this one small debt would have any significant impact on his reputation. It is even less plausible to suggest that Equifax's reporting on the

13

Comcast debt caused him "fear of personal and financial safety and security." His claim is just a laundry list of the types of non-economic damages that a person could suffer.

That is not to say that damage to one's creditworthiness is not significant – it absolutely is, and I can understand and appreciate how such damage, wrongfully inflicted, could cause a person frustration and anguish. Suffice it to say, however, that Mr. Collins presented no evidence other than his own incredible assertions that he had suffered compensable non-economic damage at the hand of Equifax. Moreover, he could have avoided the severe non-economic harm that he claims, and thereby mitigated his alleged damages, by paying the debt – a debt that the evidence has established to have been a valid obligation all along.

I have reviewed his objections to Judge Wang's evaluation of his claims against Equifax. ECF No. 181 at 14-17. He says that his damages are common to all defendants. *Id.* at 14. But the fact that Mr. Collins has chosen to sue six defendants in the same lawsuit does not mean that he isn't obligated to establish a genuine dispute of material fact that requires a trial against each defendant individually. Interestingly, he states that he was denied the bank loan on August 3, 2015 (and as a result lost the contents of a storage unit) because of information that Experian reported concerning Diversified and Medicredit – not Equifax. *Id.* at 17. Notably, he has produced no evidence from representatives of the bank that corroborates the assertion that the loan was denied because of any CRA report. In short, I have found no basis to disagree with Judge Wang's recommendation concerning the claims against Equifax.

**C. Experian.**

Magistrate Judge Wang found, as she had found in her analysis of the Trans Union motion, that Mr. Collins failed to establish a triable issue of material fact as to the inaccuracy of

the Diversified and Stellar accounts reported by Experian. ECF No. 174 at 35-36. Second, she found, again for reasons similar to those concerning Trans Union, that Mr. Collins had produced no evidence that Experian's reinvestigation procedures were unreasonable. She again noted, but rejected, Mr. Collins' argument that Experian had a duty to conduct its own investigation of the validity of the Comcast rather than relying on Diversified's and Stellar's verifications. *Id.* at 36-37. Finally, she found, as she had in her Equifax analysis, that Mr. Collins came forward with insufficient evidence of damages, instead relying on self-serving, conclusory allegations. *Id.* at 37. On my review I have found no reason to disagree with those findings and conclusions.

**ORDER**

1. The Court ADOPTS the Recommendation of the United States Magistrate Judge, ECF No. 174. The Court found no basis for disagreement with the portions of the recommendation as to which it conducted a de novo review. It found no error in the other portions of the recommend either.

2. Trans Union's motion for summary judgment, ECF No. 128, is GRANTED. Judgment will be entered dismissing plaintiff's claims against Trans Union with prejudice.

3. Medicredit's motion for summary judgment, ECF No. 130, is GRANTED IN PART AND DENIED IN PART. Judgment will enter dismissing plaintiff's Third Claim in part, i.e., as it relates to alleged violations of 15 U.S.C. § 1692g(a), and dismissing plaintiff's Fourth Claim. The motion is denied as it relates to plaintiff's claims under 15 U.S.C. §§ 1692e(2)(A) and 1692e(8).

4. Equifax's motion for summary judgment, ECF No. 135, is GRANTED. Judgment will be entered dismissing plaintiff's claims against Equifax with prejudice.

5. Experian's motion for summary judgment, ECF No. 137, is GRANTED. Judgment will enter dismissing plaintiff's claims against Experian with prejudice.

6. Stellar's motion for summary judgment, ECF No. 139, is MOOT, Stellar having settled with the plaintiff.

7. As prevailing parties, Trans Union, Equifax and Experian are awarded reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

8. The following claims have not been dismissed and therefore remain for resolution: (1) plaintiff's FDCPA claim against Diversified (within his Third Claim for Relief) and negligence in debt collection against Diversified (part of his Fourth Claim for Relief); and (2) part of his FDCPA claim against Medicredit (within his Third Claim for Relief), i.e., that part that asserts violations of 15 U.S.C. §§ 1692e(2)(A) and 1692e(8). **If the parties wish to continue the litigation over those remaining claims, please set a Scheduling Conference and submit a joint proposed Scheduling Order within 14 days after service of this order.**

DATED this 13th day of March, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge